UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 11-cv-7779 |
| FUNDS IN THE AMOUNT OF ) | |
| $220,030.00 IN U.S. CURRENCY, ) | Judge John W. Darrah |
| ) | |
| Defendant, ) | |
| ) | |
| IRA LEBOWITZ, ) | |
| ) | |
| Claimant. ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America, as Plaintiff, filed an *in rem* action, seeking the forfeiture of $220,030.00 in United States currency (the "Funds") pursuant to 21 U.S.C. § 881(a)(6). Claimant Ira Lebowitz filed a Verified Claim, alleging ownership of the Funds. The United States moved for summary judgment on the basis that Lebowitz could not meet the jurisdictional requirement of Article III standing; this motion was denied in an Order issued on October 16, 2012. The Government thereafter moved for reconsideration of the Court's denial of summary judgment. Based on the discussion below, the Government's motion for reconsideration is denied.

## BACKGROUND

The facts of this case were previously set out in the October 16, 2012 Memorandum Opinion and Order issued by the Court. In that Order, the following facts were established in accordance with Local Rule 56.1. Some of the facts included were not denied, admitted, or otherwise objected to by Lebowitz, who instead invoked his

Fifth Amendment right against self-incrimination; Lebowitz acknowledged those facts would be admitted for purposes of resolving the motion for summary judgment. The following facts were set out in the October 16, 2012 Order and, for convenience, are repeated here. The Government filed a Verified Complaint for Forfeiture on November 2, 2011, seeking forfeiture of the Funds in the Amount of $220,030.00, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure and pursuant to 21 U.S.C. § 881. *United States of America v. Funds in the Amount of $220,030 in U.S. Currency*, No. 11 C 7779, 2012 WL 5197920, at *1 (N.D. Ill. Oct. 16, 2012). On November 11, 2011, the Court issued an arrest warrant *in rem* to be executed by the United States Marshal against the Funds. *Id.* The Government gave notice of this action to all known potential claimants, including Ira Lebowitz, and further posted notice of the proceeding on an official government website for at least thirty consecutive days, pursuant to Rule G(4)(a) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions. *Id.* On December 14, 2011, Claimant Ira Lebowitz filed a Verified Claim, asserting he was "the owner of the funds" and stating the Funds were "seized from his possession." *Id.* Lebowitz claimed the right of ownership over the Funds and stated he had possession over the Funds at the time they were seized. *Id.*

On August 31, 2011, Lebowitz was stopped by an Illinois State Police Trooper while driving alone in a rental vehicle on Interstate 80. *Id.* Lebowitz handed the Trooper a valid driver's license and a Hertz rental agreement for the vehicle he was driving. *Id.* The trooper asked Lebowitz if he was carrying any guns, drugs, or large sums of money based on his observations of Lebowitz; Lebowitz replied he was not. *Id.* Lebowitz

2

consented to a search of the vehicle, and, upon searching, the trooper observed a black bag in the trunk. *Id.* Lebowitz confirmed the bag belonged to him. *Id.* The trooper noticed two manila envelopes in the black bag and asked Lebowitz what they contained. *Id.* Lebowitz stated they contained documents; however, the trooper, based on his training and experience, suspected the envelopes contained currency. *Id.* The trooper opened one of the envelopes and discovered currency inside. *Id.* The black bag and manila envelopes were detained; then, a canine performed a "sniff test" on the items, which resulted in a positive alert to the presence of narcotics. *Id.* In total, $220,030.00 in United States currency was seized from the black bag and from Lebowitz's person. *Id.* When Lebowitz was asked if the currency belonged to him, he stated he was unsure how to answer because "either way, you are going to take it." *Id.* After Lebowitz was arrested, he signed a Waiver of Rights Form. *Id.*

After filing his Verified Claim to the Funds, Lebowitz filed an answer to the Government's Verified Complaint. *Id.* at *2. On or about January 9, 2012, Lebowitz answered, under oath, Special Interrogatories issued by the Government pursuant to Rule 6(C) of the Supplemental Rules for Certain Admiralty and Maritime Claims. *Id.* Lebowitz also objected to some of the interrogatories and asserted his Fifth Amendment right against self-incrimination as to some of the questions in the interrogatories; he also asserted his Fifth Amendment right as to the United States Rule 33 Interrogatories and Rule 34 Request to Produce. *Id.* On March 16, 2012, Lebowitz's attorney informed the Government that Lebowitz would assert his Fifth Amendment right against self-incrimination in response to questions asked of him at a deposition. *Id.*

3

On March 20, 2012, the Government filed a motion for summary judgment and, in a supporting memorandum, argued Lebowitz lacked Article III standing to contest the forfeiture proceeding against the Funds. The Court denied the Government's motion for summary judgment, finding Lebowitz had met the basic burden to establish Article III standing. The October 16, 2012 Order found that Lebowitz asserted the Funds were in his possession or ownership and that the facts of the case established that Lebowitz had, at a minimum, a colorable possessory interest in the Funds and would be aggrieved if the Funds were forfeited to the Government. *Id.* at *4. Following this ruling, the Government moved the Court to reconsider its denial of the summary judgment motion.

**LEGAL STANDARD**

The Order issued on October 16, 2012 did not dispose of this case in its entirety.[1] Therefore, the Government's reconsideration motion shall be reviewed under Federal Rule of Civil Procedure 54(b), which provides, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, the Court may employ its inherent authority to reconsider interlocutory orders, as such orders may be revised at any time prior to the

---

[1] The Government indicates in its reconsideration motion that it moves for reconsideration "[p]ursuant to Fed. R. Civ. P. Rule 60(b) . . . seek[ing] reconsideration of this Court's order denying the government's motion for summary judgment for the possible inadvertence of not addressing the government's motion to strike the claim." (Mot. to Reconsider at 2 n.1.) However, Rule 60 governs relief from final orders and judgments. Final judgment has not yet been entered on this case; therefore, the Government's motion shall be examined under Fed. R. Civ. P. 54(b). *See Matter of Wade*, 969 F.2d 241, 247 (7th Cir. 1992).

4

entry of final judgment. "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider a . . . motion." *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012).

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal citation omitted); *see also Mitchell v. JCG Industries*, 842 F. Supp. 2d 1080, 1082-83 (N.D. Ill. 2012). Regarding the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (*Waunakee*). With respect to the second prong, the Seventh Circuit has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* Because the standards for reconsideration are exacting, the Court of Appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.*

5

**ANALYSIS**

The Government moves for reconsideration of the Court's denial of its summary judgment motion. In the reconsideration motion, the Government "requests this Court to consider the government's motion to strike the verified claim and reconsider its ruling on summary judgment in light of such request." (Reconsideration Mot. at 2.) Essentially, on reconsideration, the Government seeks to have the Court first strike Lebowitz's claim, which would perhaps support a reversal of the Court's ruling on its summary judgment motion regarding Lebowitz's standing. The Government's reconsideration motion, however, mischaracterizes what it initially pled and argued in its summary judgment motion. In the summary judgment motion, the Government pled "claimant Lebowitz lacks Article III standing to contest this forfeiture proceeding against the defendant funds, $220,030 in United States currency. **As such, this Court should strike his claim.**" (Summary Judgment Mot. at 1.) (emphasis added). In contrast, the Government now argues on reconsideration that the Court "could have struck the claim," which would have then altered the Court's ruling on summary judgment. (Reconsideration Mot. at 2.) Nowhere in the Government's summary judgment motion or supporting memorandum did the Government suggest that the Court *first* strike the Verified Claim and then, with the claim stricken, grant the Government summary judgment. Furthermore, the Government did not file an independent motion to strike Lebowitz's claim. Not until the Reply did the Government even suggest that the Court first strike Lebowitz's claim and then enter summary judgment on the issue of standing in favor of the Government. (Summary Judgment Reply at 2.) It is well established that arguments raised for the first

6

time in a reply brief are waived. *See Citizens Against Ruining the Environment v. E.P.A.*, 535 F.3d 670, 676-77 (7th Cir. 2008) (finding a single reference to an argument in a sentence of an opening brief inadequate and holding, "It is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond."). The Government presented no separate basis in its summary judgment motion to strike Lebowitz's claim; rather, it implied that once the Court found Lebowitz lacked Article III standing, the Court should then strike Lebowitz's claim.

The Government also appears to misapprehend the rules governing this action. Supplemental Admiralty and Maritime Claims Rule G(8)(c) provides: "At any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing." Such a motion "may be presented as a motion for . . . summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supplemental Admiralty and Maritime Claims Rule G(8)(c)(ii)(B). In spite of the clear language of the rules, the Government now attempts to put the cart before the horse, arguing that the Court should have *first* struck Lebowitz's claim, which would thereby have left Lebowitz unable to establish Article III standing.

However, the Court did *not*, in its discretion, strike Lebowitz's claim. *See United States v. One 2005 Rolls Royce Phantom*, No. 07 C 2870, 2008 WL 109114, at *2 (N.D. Ill. Jan. 8, 2008). Instead, the Court, upon reviewing all the facts presented, determined that Lebowitz had established a colorable claim sufficient to support Article III standing. Having determined Lebowitz established Article III standing, the Government's motion for summary judgment as to the forfeiture action was denied. The October 16, 2012

Order denied the Government summary judgment, and the Court necessarily declined to strike Lebowitz's claim. Moreover, Lebowitz's Verified Claim alone was not the basis of establishing standing. The Court also considered facts presented by the Government and Lebowitz, regardless of Lebowitz's Fifth Amendment assertions.

Nothing presented by the Government on its Reconsideration Motion raises an issue of a manifest error of law or fact, or newly discovered evidence. *Waunakee*, 906 F.2d at 1191-92. The Court did not misunderstand the Government's arguments in its summary judgment motion; it simply disagreed with the Government's position that Lebowitz could not meet the jurisdiction requirement of Article III standing. Having made that determination, it would have served no purpose to further consider a Government's motion to strike (which, as discussed above, was not clearly pled in the motion for summary judgment). Nor is there any reason to do so now. The denial of the Government's motion for summary judgment does not result in a finding that Lebowitz is now entitled to the Funds; it simply means that a genuine issue of material fact remains, and that Lebowitz may continue to pursue his claim, having met the basic jurisdictional requirements of standing.

**CONCLUSION**

The Government's Reconsideration Motion is therefore denied, as Claimant Lebowitz has the standing to pursue his claim over the Funds at issue, and the Court declines to strike his claim.

Date:   February 14, 2013                                     
                                                                JOHN W. DARRAH
                                                                United States District Court Judge